| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Vaughn C. Taus, Attorney at Law<br>Vaughn C. Taus, SBN 120436<br>1042 Pacific Street, Suite D<br>San Luis Obispo, CA 93401<br>(805)542-0155 Fax®805)542-0234<br>tauslawyer@gmail.com<br><br>☐ Individual *appearing without an attorney*<br>☒ *Attorney for:* Maurice and Susan Wedell | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| In re:<br><br>MARUICE WEDELL AND<br><br>SUSAN WEDELL<br><br><br><br>Debtor(s) | CASE NO.: 9:18-BK-10544-DS<br><br>CHAPTER: 11 |
|---|---|
| | **SECOND AMENDED CHAPTER 11 DISCLOSURE STATEMENT DATED July 18, 2019** |
| | Hearing/Status Conference<br>Date:          8/29/2019<br>Time:         1:00 p.m.<br>Courtroom:  201<br>Address:     1415 State Street, Santa Barbara, CA |

This Chapter 11 Disclosure Statement (Disclosure Statement) relates to the accompanying Chapter 11 Plan (Plan). The Plan proposes to restructure the financial affairs of the above-named Debtor. You may be entitled to vote on the Plan.

The voting rules are explained below, along with a summary of the Plan and other relevant information. This Disclosure Statement is explanatory only. The Plan will be the binding document, if it is confirmed by the court.

*Your rights may be affected. Read these papers carefully and discuss them with your attorney. (If you do not have an attorney, you may wish to consult one.)* Definitions and rules of construction are as set forth below and in the Plan.

### PART 1.  SUMMARY OF PLAN

**Article I of the Plan** divides creditors and interest holders into the following groups. The precise treatment proposed for each group is specified in Exhibit A to the Plan. What follows is only a summary. Please review the Plan carefully.

- **Unclassified claims**, such as costs of administering this bankruptcy case, generally are entitled to be paid in full on the Plan's Effective Date, which is defined in the Plan and should be a short time after the Plan is confirmed.

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2014*                                    Page 1                                    **F 3017-1.CH11.DISCLSR.STMT**

- **Classes 1 and 2 – Secured Claims** (divided into subclasses 1A, 1B, 2A, 2B, etc.) consist of claims secured by Collateral (such as a mortgage/deed of trust secured by a house, a car loan secured by the car, or any other claim secured by a lien on property of the bankruptcy estate), which generally are entitled to be paid in full, over time, with interest. Class 1 is reserved for claims secured *only* by real estate that is an individual Debtor's principal residence. Class 2 contains all other secured claims.
- **Class 3 – Priority Claims** (divided into subclasses 3A, 3B, etc.) consists of "priority" unsecured claims (for example, wages due to employees that were earned, but unpaid, within 180 days before the bankruptcy petition was filed).
- **Class 4 – General Unsecured Claims** consists of "general" unsecured claims (claims that are not entitled to "priority" under the Bankruptcy Code and that are not secured by Collateral), which will receive, over time, the following estimated percentage of their claims (or fixed percentage, if the Plan so provides): 23%. *Exception:* the Plan may designate a subclass of small "convenience class" claims which will be paid in full on the Effective Date, and in rare situations the Plan may designate additional unsecured subclasses.
- **Class 5 – "Interests":** if Debtor is an organization then "interests" means ownership interests – such as corporate stock, or a partner's interest in a partnership – and if Debtor is an individual, then Debtor is the interest holder. This class will remain unchanged unless otherwise stated in the exhibits to the Plan or this Disclosure Statement.

**Article II of the Plan** governs "executory" contracts and unexpired leases (a contract is generally defined as executory when both Debtor and the other party to the contract have not yet fully performed their obligations, and the unperformed obligations of both parties are significant enough that either party's breach would excuse the other party from performing). Exhibit B to the Plan specifies whether, on the Effective Date, each such contract or lease (a) will be "assumed" as an obligation of the reorganized Debtor (generally meaning that defaults will be cured and the agreement will be reinstated), or (b) will be assumed and then instantaneously assigned to a specified person, or (c) will be "rejected" (meaning that Debtor will no longer perform under the agreement, and the other party can file a claim for damages resulting from that rejection (§ 502(g)).

**Article III of the Plan** explains how Debtor will implement the Plan and exhibits to this Disclosure Statement describe whether payments under the Plan will be made out of cash on hand, future income, sale(s) of property(ies), or other sources of funding, including supporting calculations. If Debtor is an individual, and if any holder of an allowed unsecured claim objects, then the value of property to be distributed under the Plan must be not less than Debtor's projected disposable income for 5 years (60 months) from the first Plan payment, or for the total payment period under the Plan, whichever is longer (§ 1129(a)(15)).

**Article IV of the Plan** provides that Debtor will be discharged from existing debts as provided in § 1141(d). Generally this means that (1) if Debtor is *not an individual* then the discharge occurs when the Plan is confirmed (except for a liquidating Plan), and (2) if Debtor *is an individual* then (a) the discharge will not occur unless and until Debtor completes all payments under the Plan (all payments for the Plan Term, as specified in Exhibit A to the Plan), unless the court orders otherwise in certain situations, and (b) Debtor will not be discharged from debts that are nondischargeable under § 523. Article IV of the Plan also specifies certain effects of confirmation, including that creditors are prevented from attempting to collect preconfirmation obligations except in specific circumstances or in accordance with the terms of the Plan.

**Article V of the Plan** includes General Provisions, such as how the Plan can be modified, and a provision that if the Plan complies with certain technical rules then it can be confirmed even if one or more classes of creditors or interest holders vote to reject the Plan (§ 1129(b)).

## PART 2. VOTING ON PLAN, AND OBJECTIONS

**A. Who may vote:** You are entitled to vote on the Plan unless: (1) your claim or interest is Disputed (as defined in the Plan); (2) your class is to receive no distribution (presumed to reject the Plan); (3) your class is "unimpaired" (presumed to accept the Plan – see Exhibit A to the Plan for the proponent's designation of which

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2014*                                          Page 2                              **F 3017-1.CH11.DISCLSR.STMT**

classes are "impaired") (§ 1124); or (4) your claim is unclassified (and thus is required by law to be paid in full) (§§ 1123(a)(1) & 1129(a)(9)(A) & (C)). If your claim or interest is Disputed then you must file a motion to have it allowed for voting purposes (you must do that soon, so that your motion can be heard before votes are counted) (Rule 3018(a)).

**B. Who may vote in more than one class:** If your claim has been allowed in part as a secured claim and in part as an unsecured claim, or if you otherwise hold claims or interests in more than one class, you are entitled to accept or reject the Plan in each capacity and you should return one ballot for each claim or interest.

**C. How to vote:** Fill out and return the attached ballot (if you are entitled to vote) so that it is _**received by the deadline**_ and according to the other instructions in the enclosed order or court-approved notice regarding voting and procedures.

**D. Effect of vote:** The Plan will be confirmed only if (1) it is accepted by each impaired class, or (2) it is accepted by at least one impaired class (without counting the votes of "insiders," as defined in § 101(31)) and the court determines that the Plan is "fair and equitable" (as defined by § 1129(b)) to all rejecting classes of creditors, and (3) it meets all of the other legal requirements for confirmation. A class of creditors accepts the Plan if a majority in number and at least two-thirds in dollar amount of the claims in that class are timely voted in favor of the Plan (§ 1126(c)). A class of interests accepts the Plan if at least two-thirds of those interests are timely voted in favor of the Plan (§ 1126(d)).

**E. Solicitation of votes:** Nobody is permitted to solicit your vote to accept or reject any plan during the bankruptcy case unless, at or before the time of the solicitation, you have been provided with the plan or a summary of the plan and a written disclosure statement that has been approved by the court as containing adequate information for you to make an informed judgment about the plan. Then any person may solicit your vote for or against the Plan.

**F. Who may object:** Even if you are not entitled to vote, you can object to confirmation of the Plan if you believe that the requirements for confirmation are not met (and if you are a party in interest in this bankruptcy case). For the deadlines and procedures, see the enclosed order or court-approved notice.

## PART 3.  OTHER INFORMATION

**A. Background/Risk Factors.** Attached as an exhibit to this Disclosure Statement is a brief description of: (1) Debtor's history: the events leading to the chapter 11 bankruptcy, and any other relevant history of Debtor's business and financial affairs; (2) significant events during the bankruptcy case; and (3) exit strategy: steps taken or planned to fix the problems that led to bankruptcy, and the principal risk factors in future.

**B. Litigation.  Debtor might sue you if, for example, you received a transfer of funds or any other property from Debtor that is avoidable under the Bankruptcy Code.** Other types of claims also may be made, and the Plan proponent has not completed investigations, but the anticipated and pending legal proceedings by or against Debtor are listed in an exhibit to this Disclosure Statement.

**C. Feasibility:** The Plan cannot be confirmed unless the court finds it feasible. A Plan is feasible if confirmation of the Plan is not likely to be followed by Debtor's liquidation or need for further financial reorganization, unless such liquidation or reorganization is proposed in the Plan (§ 1129(a)(11)). The Plan proponent believes it is feasible because, both on the Effective Date and for the duration of the Plan, the proponent estimates that Debtor will have sufficient cash to make all distributions. Projected revenues, expenses, and proposed payments to creditors during the Plan Term are specified in Exhibit C to this Disclosure Statement.

**D. Tax consequences of the Plan:** (1) Tax consequences to the debtor: The tax consequences to Debtor of the Plan's implementation, including but not limited to tax attribute reduction and the recognition of gain or loss on any sale of Debtor's assets (and the projected tax thereon), have been taken into account and are properly reflected in the financial projections attached to this Disclosure Statement and Exhibits A and B to the Plan.

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

_June 2014_                                    Page 3                          **F 3017-1.CH11.DISCLSR.STMT**

(2) <u>Tax consequences to holders of claims and interests</u>:  You should consult your own accountant, attorney and/or advisors as to the tax effect to you of Plan transactions.

*[Note:  Pursuant to § 1125(a)(1), the court may require a more detailed description of the tax consequences of the Plan to the debtor and other interested parties, including holders of claims and interests, if the court determines that such information is required in view of the Plan's complexity, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information].*

**E. Liquidation analysis:**  The Plan cannot be confirmed unless the court finds that, for each impaired class of claims or interests that has not accepted the Plan, the class will receive or retain no less than if Debtor's bankruptcy estate were liquidated under chapter 7 of the Bankruptcy Code.  A liquidation analysis is attached as an exhibit to this Disclosure Statement.

**F. Special procedures:**  This Disclosure Statement and the accompanying Plan, with exhibits, are the principal documents for Debtor's proposed financial restructuring, but the court may authorize more lengthy documents to be filed separately (a Plan supplement), or may authorize shorter documents to be served on some classes.  Streamlined procedures are encouraged, both to save costs and because that may provide creditors and other parties in interest with more meaningful disclosure.  For example, the court may consider: (1) whether, instead of receiving the full Plan and Disclosure Statement, some classes should receive a "court-approved summary" such as a brief table showing the proposed treatment of each class, with prominent instructions on how to request a copy of the full documents and/or review them online (*see* § 1125(b) & (c) and Rule 3017(d)(1)); (2) whether to establish special procedures for transmitting documents and information "to beneficial holders of stock, bonds, debentures, notes, and other securities" (*see* Rule 3017(e)), (3) whether to adjust any deadlines (*see* Rule 9006(c)), and (4) whether to adopt any other special procedures.

| | |
|---|---|
| I declare under penalty of perjury under the laws of the United States that the foregoing and the factual assertions in the attached exhibits are true and correct.<br><br>Signature: _M. Wedell_<br>Debtor or other Plan proponent<br><br>Date: 7/19/19 | Printed name of signer:<br>Maurice L. Wedell<br><br>Organization (if applicable):<br>_____<br><br>Title (*e.g.*, President):<br>_____ |
| Signature: _____<br>Attorney (if any) for Plan proponent<br>Date: 7/19/19 | Printed name of signer:  Vaughn C. Taus<br>Law firm: Vaughn C. Taus, Attorney at Law |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

June 2014                                    Page 4                          F 3017-1.CH11.DISCLSR.STMT

**Attorney Certification** (subject to what the judge may permit/require, this form is not mandatory, but if it is used then it and its exhibits must not be altered without disclosure/authorization as provided below):

I, the undersigned, am legal counsel for the above-referenced Plan proponent, and I hereby certify the following: (1) the foregoing Disclosure Statement and attached exhibits are true and correct copies of the latest versions of the local forms of disclosure statement and exhibits approved for use by the United States Bankruptcy Court for the Central District of California; (2) modifications have been made as directed or permitted by written order (docket no. ___) (or, if the presiding judge permits, by other authorization such as oral approval by the court on the record – specify: _____); and (3) no other alterations or modifications to any provision of such form have been made except as shown by a "redlined" version of this Disclosure Statement (docket no. ___) or as follows:

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: _____Signature: _____, Print name: Vaughn C. Taus

| Exhibits to Plan | Description | Exhibits to Disclosure Statement | Description |
|---|---|---|---|
| A | Treatment of Claims and Interests | C | Projected Revenues and Expenses |
| B | Treatment of Executory Contracts and Unexpired Leases | D | Recent Financial History |
| Additional Enclosures | Description | E | Secured Claims, and any § 1111(b) Analysis and Priority Claims |
| | Ballot | F | General Unsecured Claims (Class 4) |
| | Order or Notice Regarding Deadlines and Procedures | G | Liquidation Analysis |
| | | H | Endnotes/Continuation Sheets |

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

June 2014                                    Page 5                          F 3017-1.CH11.DISCLSR.STMT

# EXHIBIT A

MAURICE AND SUSIE WEDELL
STATEMENT OF THE CASE
SECOND AMENDED
CHAPTER 11 PLAN AND
DISCLOSURE STATEMENT
9:18-BK-10544-DS

## I
## INTRODUCTION

Debtors own a winery and incurred substantial debt in connection with expansion of the winery and expensive litigation.  Debtors filed this chapter 11 bankruptcy to allow for the orderly sale of the winery's inventory in the manner that will provide the greatest repayment to creditors.  Debtors have made great strides to this end.  Confirmation of the debtors' chapter 11 plan will allow for immediate distribution of $45,000 to creditors, followed by 59 monthly payments. The plan provides for repayment of a total of $175,103 to creditors.  The chapter 11 plan will pay 18.49% of the allowed general unsecured claims.  This compares favorably with the liquidation value of practically zero for debtors' assets, if the chapter 11 plan is not confirmed and the debtors' case was converted to one under chapter 7 of the bankruptcy code.

## II
## STATEMENT OF FACTS

### A.   History of Debtors' finances

Maurice Wedell and Susie Wedell are married and have two adult sons.  Mr. Wedell has been a Certified Tax Preparer since 1979 and operates his practice under his own name.  Mr. Wedell specializes in accounting, bookkeeping and management of high end Los Angeles restaurants and has a regular stable of clients.  Susie Wedell is a special education aide and has been employed in by the Lucia Mar Unified School District, in Arroyo Grande, California, since 2005.

In 1994 Mr. and Mrs. Wedell obtained a license and began operation of Wedell Cellars, specializing in premium central coast Chardonnay and Pinot Noir wines.  The winery began sales in 1996 and obtained an independent bond in 2010.  The winery remained financially sound through 2013.  For the five years through 2011 the Wedells sold approximately 1,000, 12 bottle cases of wine, per year.  The wines sold for $40 to $120 per bottle, retail.

Throughout the winery's operations, the wines have been made by consulting wine makers, in space leased at commercial production facilities.  The winery does not have its own facility or staff.  Through 2013 Mr. Wedell conducted all of the sales, to wine distributors, who purchased and resold the wines wholesale and to wine brokers, who brokered sales and collected a commission.  The wines were sold in California, Arizona and Nevada.

Beginning in late 2012 a representative of one of Wedell Cellars' wine distributors proposed taking over sales and expanding the brand out of the west, to be nationwide. In 2012 the Wedells introduced the Wavertree label to bottle and sell a lower price line. The winery's production increased to 2,000 cases in 2012 and 3,000 in 2014. This arrangement did not work out well for the Wedells.

In order to achieve this expansion the Wedells borrowed significant amounts of money from commercial lenders and personal loans from friends and family. These debts constitute the most significant portion of the approximately \$800,000 in unsecured debts being addressed in the bankruptcy.[1]

The new brand manager did expand sales to 18 states. However, this was accomplished by aggressive discounting and other incentives to customers. Incentives include, for example, providing an additional bottle to a customer for each case purchased. While these techniques are common to increase sales in the wine industry, they come at a significant cost. This is a bigger problem with the more expensive line of wines sold by Wedell Cellars.

The winery's profit margin on sales slumped to an unsustainable level. Then the person who had promoted the expansion of production and nationwide sales, stopped his effort. As a result, sales declined steeply and rapidly.

Unfortunately, between 2011 and 2013, the Wedells were also engaged in extremely expensive, protracted litigation with a vineyard from which a major portion of their Pinot Noir grapes were sourced. Even though the Wedells recovered an award of \$200,000 in arbitration, their legal fees were \$460,000. The cost of litigation eliminated all of the Wedell's cash reserves and put them further into debt.

Ultimately, debt service for the money borrowed to expand production, the money owed to vineyards for the expanded purchases of grapes and dwindling sales, caused the Wedells to file this chapter 11 bankruptcy. In 2017, the Wedells paid in excess of \$80,000 to service unsecured debt. This was a third of their gross winery revenue.

## B.  Current Assets and Operations of Wedell Cellars

On April 11, 2018, when this case was filed, Wedell Cellars had the inventory described on Exhibit G-1. The inventory had a historic cost of nearly \$800,000 and comprised 2,745, 12 bottle cases and barrels of wine containing approximately 167, 12 bottle cases.[2]

---

[1] Mrs. Wedell's mother Mary Jane Johnston, who would be considered an insider, is the holder of the largest general unsecured claim.

[2] A review of the inventory of Wedell Cellars, exhibit G-1 reflects many cases of wine that are 2010, 2011 and 2012 vintage. While the wines drink well, wines more than three or four vintages old are generally considered too old to be sold by a winery and have little or no resale value. One adjustment to inventory value is reflect the minimal resale value of these older wines.

When this case was filed, debtors projected that the liquidation value of this wine would be, at most, $20 per case, or approximately $60,000, if buyers could be found. After payment of sales commissions, the net amount would be significantly less. The low value was due to the fact that wines from out of business wineries have, for the most part, little value in wholesale or retail markets.

During the six months ending October 31, 2018, Mr. Wedell has successfully sold $133,691 in wine. The wine sold had a historic cost of $222,440. After costs of operating the winery, commissions and other costs of sale, the Wedells have produced net $97,500, from the operation of the winery. As a result, the chapter 11 plan proposes an initial distribution to creditors of $45,000, on the effective date of the plan.[3]

$80,768 of the wine sold in the last six months was to a major travel business, with which Wedell Cellars has a long relationship. Debtor is regularly negotiating additional sales to this valuable customer.

Since the bankruptcy was filed, Wedell Cellars has obtained representation by a supportive wine broker. The broker is selling Wedell Cellars wines in California and Tennessee. Mr. Wedell continues his active efforts to market the wine through his connections in the southern California restaurant community and in commercial and retail wine events. Since the case was filed Wedell Cellars has sold approximately $7500 per month, between the efforts of Mr. Wedell and the broker.

Based on sales from the time the case was filed and projected through December 31, 2018, Wedell Cellars will have the December 31, 2018 inventory reflected on Exhibit G-2. One key change in inventory, since the case was filed is that all of the wine in barrel is now bottled and ready to be sold.

A profit and loss statement for the Wedell's reflecting income and expenses for the two years preceding the filing of this bankruptcy for: Wedell Cellars; Mr. Wedell's accounting practice; Mrs. Wedell's income from education and the Wedells' personal expenses, is attached as exhibit D.

Debtors have begun liquidating the relatively limited amount of winery equipment. The most valuable piece of equipment is the forklift. Debtors have had the forklift for sale for $8,500 for more than six months but have not had interest from a buyer. Debtors have several fermentation tanks, also for sale. Debtors have sold all of the winery's fermentation bins and barrels, for a total of less than $6,000 and all proceeds have been deposited into the debtor in possession account. Debtors will contribute any proceeds from sale of equipment to the amount paid to creditors. The addition will have little effect on the total payout but will only increase the amount to creditors.

C.    Future operation of Wedell Cellars and Payment for the Chapter 11 Plan

---

[3]Based on accounts receivable and cash needs of the business, $85,000 will be available on the effective date of the chapter 11 plan. Debtors project attorney fees of approximately $45,000, with $40,000 paid upon court approval and $500 per month paid for ten months

It is debtors' intention to continue vigorously marketing the wine owned by Wedell Cellars. Debtors' success, thus far, demonstrates that the wines have substantial value, if actively marketed. The range of vintages of the wine and the wine's reputation for aging well, making the wines much more marketable.

Debtors operated the winery profitably for many years. However, debtors' purpose in operating the winery now is to obtain maximum return for the creditors from the available inventory. In order to do that, debtors have created a marketing plan and pricing structure to sell the inventory within the term of the chapter 11 plan.

Debtors valued the wines that remain in inventory, on exhibit G-2. In order to calculate this figure, debtors applied a fifteen percent discount from the original wholesale prices and an additional fifteen percent discount due to loss of value as the wines age, unsold. Based on this valuation, debtors project that between the time this disclosure statement is filed and the end of the sixty month term of the chapter 11 plan, all of the wine reflected on exhibit G-2 will be sold, for a total of $238,000.

Debtors project costs totaling $113,845 will be incurred in connection with maintenance and sale of the wine. Debtors project that operation of the winery during the term of the chapter 11 plan will result in additional net cash flow of $140,155. Cash flow from annual operations of the winery is reflected on exhibit C, next to the title Wedell Cellars Cash Flow. This amount will be distributed to creditors in monthly payments reflected on exhibit A to the chapter 11 plan. Creditors that will receive payments under the chapter 11 plan are listed on exhibit F.

Thus far, debtors' performance of the business plan has proceeded well and the wines continue to sell at close to the predicted pace. This is reflected on the monthly operating reports filed by debtors each month since the bankruptcy was filed.

The budget on exhibit C is based on income from three sources: Wedell Cellars; Mr. Wedell's accounting practice; and Mrs. Wedell's teaching. The budget reflects that the Wedells consume the income that they generate from Mr. Wedell's business and Ms. Wedell's education income, in their normal living expenses.

On this basis, the Wedells propose funding distributions and their other obligations under the chapter 11 plan, from income generated by Wedell Cellars.

D.    Real Property in which Debtors have an Interest

As reflected on the exhibit G-3 to the liquidation analysis, the Wedells own interests in two homes: their home at 344 Equestrian Way, in Arroyo Grande, California (the "Home") and a rental property in Burbank, California, owned with Mrs. Wedell's mother.

The Home has a large debt and substantial deferred maintenance. In response to objections by creditors, debtors obtained an appraisal of the Home, which valued the property at $900,000, as of February 22, 2019. This value is $175,000 less than debtors' estimate reflected in the initially filed chapter 11 disclosure statement. The valuation was substantially influenced by issues with the condition of the Home.

4

Evidence of the value of the property will be provided by declaration of the appraiser, prior to the hearing on the disclosure statement.  Any interested party may request a copy of the appraisal of the Home from debtors' attorney.

Evidence of the balance of the mortgage debt will be provided by declaration prior to the hearing on the disclosure statement.  The balance of the debt as of February 1, 2019 is $873,913.88.

It is unlikely that the residence has any net value, if sold, due to the large number of repairs necessary to a large home.  The Wedells are entitled to a homestead exemption of $175,000, based on Mrs. Wedell's age at the time the case was filed.  However, the value of the home is hardly enough to require much of that exemption.

Debtors own a half interest and Mrs. Wedell's mother owns a half interest in a rental property in Burbank, California, as reflected on exhibit G-3.  As part of their efforts to fund the winery expansion, the Wedells borrowed $168,000, against their interest in the Burbank property.  The Wedells received all of the proceeds of the loan.  There has been a steep increase in the value of the Burbank property.  If the property is sold, however, the Wedells will only be able to pay off the loan.  The balance of the money they would receive will be paid in capital gains tax.  Debtors project that they have no net equity in the Burbank property.

## E.    Treatment of Claims Resolved in Bankruptcy

Before the bankruptcy creditor Fiddlehead Cellars LP recorded an abstract of judgement that affects debtors' residence.  The Fiddlehead proof of claim asserts the claim is fully secured.  Debtors dispute that the claim is secured.  Through extensive negotiations debtors and Fiddlehead agreed to treatment the Fiddlehead claim in the manner reflected in a stipulation filed with the court on May 24, 2019 class 1 B in the chapter 11 plan.  $20,000 of the Fiddlehead claim is treated as secured.  The claim will be paid an initial distribution of $20,000 on the effective date.  The $65,714.41 balance of the claim will be treated and paid proportionally from the monthly payments made to class 4 general unsecured creditors.

Valley View Vintners, Inc. is owned by the Wedell's winemaker Kirby Andersen.  In the schedules debtors provided for a claim of $25,000 for Mr. Anderson.  Instead, Valley View Vintners, Inc. filed a complex proof of claim, asserting that some portion of the claim was entitled to treatment as a priority claim.  Debtors filed an objection to the Valley View Vintners, Inc. claim.

After extensive negotiations, debtors and Valley View Vintners, Inc. agreed that Valley View Vintners, Inc.'s claim will be paid $10,000, at $1,000 per month, for the first ten months after which Valley View Vintners, Inc. will be paid proportionally, based on a $50,000 general unsecured claim.

As a result of the resolution of these two claims the amount of general unsecured debts increased from $806,442.26, in the initially filed chapter 11 plan and disclosure statement to $811,442.26.

5

F.    Risks Associated with Confirmation of the Chapter 11 Plan

The primary risk in approving the chapter 11 plan is that Mr. Wedell is unable to complete sales of the wines in the manner he proposes. However, to this time, the Wedells have exceeded the projections they made when this case was filed. The operations have been reduced to the simple and limited formula that was successful before the expansion. The winery is now able to discount the wines to appeal to a broader market, without losing the super premium identity. This should enable Mr. Wedell to continue the trajectory of sales he has set to this point.

If the Wedells' chapter 11 plan is not confirmed, the Wedells will be forced to convert their case to one under chapter 7 of the bankruptcy code. Creditors would still receive the initial $45,000 distribution and any other money received from wine sales, so far. However, the balance of the wine will have little or no value and Mr. Wedell will discontinue his efforts to sell the wine.

Beyond the wine, the Wedells have few assets of value, as reflected on the liquidation analysis attached as exhibit G. Therefore, conversion to chapter 7 will result in significantly less payment to creditors than the confirmed chapter 11 plan.

## III
## OWNERSHIP AND MANAGEMENT
## OF DEBTORS' BUSINESS

Maurice and Susie Wedell will retain ownership and control of Wedell Cellars, which is a sole proprietorship. Maurice Wedell will manage and operate Wedell Cellars. Mr. Wedell is not seeking compensation for his services in operating Wedell Cellars. It is anticipated that the winery will have no equity value when payments pursuant to the chapter 11 plan are completed. Any assets that may remain, such as equipment, will be sold and the proceeds will be distributed as an additional distribution to creditors. No amount is provided for this eventuality, since any distribution is anticipated to be minimal.

## IV
## TAX CONSEQUENCES OF OPERATION
## OF DEBTORS' BUSINESSES

Debtors have substantial losses, that they anticipate will offset any income debtors receive during the term of the chapter 11 plan. Debtors do not anticipate that the proposed chapter 11 plan will have any identifiable tax consequences to debtors or the chapter 11 estate.

# EXHIBIT B

MAURICE AND SUSIE WEDELL
SECOND AMENDED
CHAPTER 11
9:18-BK-10544-DS
DISCLOSURE STATEMENT
EXHIBIT B

Debtors do not intend to file any litigation in connection with the instant bankruptcy. Debtors do not anticipate any litigation being filed by any other party, with respect to the instant bankruptcy.

**EXHIBIT C**

| Creditor | Amount of Claim | % of Total Debt | Month 1 Initial Distribution | Months 2-12 Annual | Months 2-10 Monthly | Month 11 Monthly | Month 12 Monthly | Months 13-24 Annual | Months 13-24 Monthly | Months 25-36 Annual | Months 25-36 Monthly | Months 37-48 Annual | Months 37-48 Monthly | Months 49-60 Annual | Months 49-60 Monthly | Total Dividend |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| American Express National Bank | $5,522.70 | 0.68% | $190.03 | $174.59 | $14.49 | $20.39 | $23.79 | $256.92 | $21.41 | $187.56 | $15.63 | $138.60 | $11.55 | $74.16 | $6.18 | $1,021.86 |
| American Express National Bank | $19,961.74 | 2.46% | $688.18 | $630.95 | $52.35 | $73.75 | $86.05 | $929.28 | $77.44 | $678.36 | $56.53 | $501.24 | $41.77 | $268.08 | $22.34 | $3,696.09 |
| Bank of America | $16,674.37 | 2.05% | $575.26 | $525.12 | $43.55 | $61.46 | $71.71 | $774.36 | $64.53 | $565.32 | $47.11 | $417.72 | $34.81 | $223.44 | $18.62 | $3,081.22 |
| Bank of America, N.A. | $19,924.85 | 2.46% | $686.90 | $630.95 | $52.35 | $73.75 | $86.05 | $929.28 | $77.44 | $678.36 | $56.53 | $501.24 | $41.77 | $268.08 | $22.34 | $3,694.81 |
| Bank of America, N.A. | $17,662.24 | 2.18% | $609.34 | $558.77 | $46.35 | $65.36 | $76.26 | $823.44 | $68.62 | $601.20 | $50.10 | $444.24 | $37.02 | $237.60 | $19.80 | $3,274.59 |
| Bank of America, N.A. | $20,280.45 | 2.50% | $699.18 | $640.66 | $53.14 | $74.95 | $87.45 | $944.40 | $78.70 | $689.40 | $57.45 | $509.40 | $42.45 | $272.52 | $22.71 | $3,755.56 |
| Bank of America, N.A. | $14,484.04 | 1.78% | $499.69 | $457.26 | $37.96 | $53.36 | $62.26 | $672.36 | $56.03 | $490.80 | $40.90 | $362.64 | $30.22 | $194.04 | $16.17 | $2,676.79 |
| ETS Laboratories | $1,132.00 | 0.15% | $39.05 | $36.75 | $3.00 | $4.50 | $5.25 | $56.64 | $4.72 | $41.40 | $3.45 | $30.60 | $2.55 | $16.32 | $1.36 | $220.76 |
| Francois Freres USA, Inc. | $699.79 | 0.02% | $24.14 | $17.50 | $1.80 | $0.60 | $0.70 | $7.56 | $0.63 | $5.52 | $0.46 | $4.08 | $0.34 | $2.16 | $0.18 | $60.96 |
| Fiddlehead Cellars, LP | $65,714.41 | 8.10% | $20,000.00 | $2,077.94 | $172.42 | $242.83 | $283.33 | $3,059.76 | $254.98 | $2,233.56 | $186.13 | $1,650.36 | $137.53 | $882.84 | $73.57 | $29,904.46 |
| Karl H Hesper | $35,000.00 | 4.31% | $1,207.50 | $1,107.16 | $91.91 | $129.21 | $150.76 | $1,628.16 | $135.68 | $1,188.48 | $99.04 | $878.16 | $73.18 | $469.80 | $39.15 | $6,479.26 |
| Karl H Hesper | $94,665.73 | 11.67% | $3,265.96 | $2,993.13 | $248.34 | $349.86 | $408.21 | $4,408.32 | $367.36 | $3,218.04 | $268.17 | $2,377.80 | $198.15 | $1,272.00 | $106.00 | $17,535.25 |
| Loanme, Inc. | $74,917.65 | 9.23% | $2,584.15 | $2,368.97 | $196.60 | $276.71 | $322.86 | $3,486.60 | $290.55 | $2,545.20 | $212.10 | $1,880.64 | $156.72 | $1,006.08 | $83.84 | $13,871.64 |
| Mary Jane Johnston | $188,457.61 | 23.23% | $6,501.78 | $5,959.40 | $494.49 | $696.42 | $812.57 | $8,775.12 | $731.26 | $6,405.72 | $533.81 | $4,733.04 | $394.42 | $2,532.00 | $211.00 | $34,907.06 |
| Saxco Int. LLC | $8,572.16 | 1.07% | $295.73 | $272.73 | $22.58 | $32.08 | $37.43 | $404.16 | $33.68 | $295.08 | $24.59 | $218.04 | $18.17 | $116.64 | $9.72 | $1,602.38 |
| Tommaso Barletta | $58,815.07 | 7.25% | $2,029.11 | $1,859.11 | $154.24 | $217.35 | $253.60 | $2,738.64 | $228.22 | $1,999.20 | $166.60 | $1,477.20 | $123.10 | $790.20 | $65.85 | $10,893.46 |
| Valley View Vintners | $50,000.00 | 6.16% | $1,000.00 | $9,400.14 | $1,000.00 | $184.67 | $215.47 | $2,326.92 | $193.91 | $1,698.60 | $141.55 | $1,255.08 | $104.59 | $671.40 | $55.95 | $16,352.14 |
| Vincent Hearn | $57,267.12 | 7.06% | $1,975.71 | $1,810.94 | $150.26 | $211.65 | $246.95 | $2,666.88 | $222.24 | $1,946.76 | $162.23 | $1,438.56 | $119.88 | $769.56 | $64.13 | $10,608.41 |
| Wells Fargo Bank, N.A. | $2,199.52 | 0.30% | $75.53 | $71.68 | $5.80 | $8.99 | $10.49 | $113.28 | $9.44 | $82.68 | $6.89 | $61.08 | $5.09 | $32.64 | $2.72 | $436.89 |
| Xceed Financial Credit Union | $9,115.50 | 1.12% | $314.48 | $288.67 | $23.99 | $33.58 | $39.18 | $423.12 | $35.26 | $308.88 | $25.74 | $228.24 | $19.02 | $122.04 | $10.17 | $1,685.43 |
| Barrel Assoc International | $1,432.70 | 0.18% | $49.42 | $45.99 | $3.81 | $5.40 | $6.30 | $68.04 | $5.67 | $49.68 | $4.14 | $36.72 | $3.06 | $19.56 | $1.63 | $269.41 |
| Carlson & Associates | $2,352.61 | 0.29% | $81.16 | $74.63 | $6.20 | $8.69 | $10.14 | $109.56 | $9.13 | $79.92 | $6.66 | $59.04 | $4.92 | $31.56 | $2.63 | $435.87 |
| Jarvis Estate | $6,800.00 | 0.84% | $234.60 | $214.67 | $17.79 | $25.18 | $29.38 | $317.28 | $26.44 | $231.60 | $19.30 | $171.12 | $14.26 | $91.56 | $7.63 | $1,260.83 |
| Pench Ranch Vineyards | $15,800.00 | 1.95% | $545.10 | $500.80 | $41.57 | $58.46 | $68.21 | $736.68 | $61.39 | $537.72 | $44.81 | $397.32 | $33.11 | $212.64 | $17.72 | $2,930.26 |
| Vincent M Spohn | $24,000.00 | 2.96% | $828.00 | $758.83 | $62.95 | $88.74 | $103.54 | $1,118.28 | $93.19 | $816.24 | $68.02 | $603.12 | $50.26 | $322.92 | $26.91 | $4,447.39 |
| Totals | $811,442.26 | 100.00% | $45,000.00 | $33,477.34 | $2,997.94 | $2,997.94 | $3,497.94 | $37,775.04 | $3,147.92 | $27,575.28 | $2,297.94 | $20,375.28 | $1,697.94 | $10,899.84 | $908.32 | $175,102.78 |

# EXHIBIT D

## WEDELL CELLARS
### INCOME STATEMENT FOR THE PERIOD JANUARY 1, 2016 THRU DECEMBER 31, 2016

|  |  | WEDELL CELLARS |  | WEDELL FINANCIAL |
| --- | --- | --- | --- | --- |
| GROSS SALES |  | 347,041.00 | 100.00% | 54,850.00 |
| LESS SAMPLES AND DEPLETION ALLOWANCES |  | 26,424.78 | 7.61% |  |
| NET SALES |  | 320,616.22 | 92.39% | 64,850.00 |
| COST OF GOODS SOLD |  |  |  |  |
| BEGINNING INVENTORY 01-01-16 | 1,114,850.00 |  |  |  |
| PURCHASES AND 2016 CAPITALIZED COSTS | 126,276.00 |  |  |  |
| ENDING INVENTORY 12-31-16 | 1,014,030.00 |  |  |  |
| COST OF GOODS SOLD |  | 227,096.00 | 70.83% |  |
| GROSS PROFIT |  | 93,520.22 | 29.17% | 64,850.00 |
| GENERAL AND OVERHEAD EXPENSES |  |  |  |  |
| AUTOMOBILE & TRUCK EXPENSES |  | 4,590.00 | 1.43% | 12,663.00 |
| OFFICE SUPPLIES |  | 1,395.09 | 0.44% | 9,462.00 |
| INSURANCE |  | 6,100.00 | 1.90% |  |
| REPAIRS & MAINTENANCE |  | 450.00 | 0.14% |  |
| SALES COMMISSIONS |  | 54.00 | 0.02% |  |
| TAX & LICENSES |  | 2,144.68 | 0.67% | 450.00 |
| SHIPPING |  | 6,337.74 | 1.98% |  |
| STORAGE & RENT |  | 10,733.88 | 3.35% |  |
| TRAVEL |  | 739.33 | 0.23% |  |
| ENTERTAINMENT & PROMOTION |  | 1,725.00 | 0.54% | 779.00 |
| DUES & SUBSCRIPTIONS |  |  |  | 3,931.60 |
| TELEPHONE & INTERNET ACCESS |  | 2,370.18 | 0.74% | 1,503.33 |
| BANK CHARGES & CREDIT CARD DISCOUNTS |  | 1,471.71 | 0.46% | 120.00 |
| LEGAL EXPENSE |  | 3,000.00 |  |  |
| INTEREST EXPENSE |  | 60,421.78 | 18.85% |  |
| TOTAL GENERAL AND OVERHEAD EXPENSES |  | 101,533.39 | 31.67% | 28,908.93 |
| NET INCOME |  | (8,013.17) | -2.50% | 35,941.07 |

# EXHIBIT E

Maurice and Susan Wedell 9:11-BK-10544-DS
EXHIBIT E TO CHAPTER 11 PLAN
(Second Amended)

## SECURED CLAIMS

| CLASS 1A | DESCRIPTION | INSIDER | IMPAIRMENT | TREATMENT |
|---|---|---|---|---|
| | **Secured Claim of:** Bank of America Proof of Claim No. 21 | No | None | **Payment Interval:** Monthly |
| | **Collateral Value:** $900,000.00 | | | **Payment Amount:** $7,800.00 |
| | **Description:** 344 Equestrian Way Arroyo Grande, CA | | | **Balloon Payment:** None |
| | **Priority of Security Interest:** 1st | | | **Begin Date:** |
| | **Adjusted Principal Owed:** $899,552.99 | | | **End Date:** |
| | **Total Amount of Claim:** $899,552.99 | | | **Treatment of Lien:** Secured |

| 1B | DESCRIPTION | INSIDER | IMPAIRMENT | TREATMENT |
|---|---|---|---|---|
| | **Secured Claim of:** Fiddlehead Cellars, LP Proof of Claim No. 5 | | The claim was filed as secured. Debtors and Fiddlehead Cellars LP agreed to treat $20,000 of the claim as secured and $65,714.41 as a general unsecured claim | **Payment Interval:** Regular monthly payments after initial $20,000 distribution |
| | **Collateral Value:** $900,000.00 | | | **Payment Amount:** $20,000 of the claim will be treated as secured. The claim will be paid an initial distribution of $20,000 on the effective date. The $65,714.41 balance of the claim will be treated and paid proportionally from the monthly payments made to class 4 general |

| | | | unsecured creditors. |
|---|---|---|---|
| **Description:**<br>Abstract of Judgment on real property | | | **Balloon Payment:**<br>None |
| **Priority of Security Interest:**<br>Junior | | | **Begin Date:**<br>Effective date of plan. |
| **Adjusted Principal Owed:**<br>$85,714.41 | | | **End Date:**<br>Date of final plan payment |
| **Total Amount of Claim:**<br>$85,714.41 | | | **Treatment of Lien:**<br>Partially secured |

| | **DESCRIPTION** | **INSIDER** | **IMPAIRMENT** | **TREATMENT** |
|---|---|---|---|---|
| **CLASS 2A** | | | | |
| | **Secured Claim of:**<br>First National Bank<br>Proof of Claim No. 20 | | This claim will be paid monthly according to its terms. The claim is past due and debtors are seeking to refinance their debt. | **Payment Interval:**<br>Monthly |
| | **Collateral Value:**<br>$237,500.00 | | | **Payment Amount:**<br>$1,645.00 |
| | **Description:**<br>365 W. Alameda Ave, #204<br>Burbank, California | | | **Balloon Payment:**<br>September 1, 2018 |
| | **Priority of Security Interest:** | | | **Begin Date:** |
| | **Adjusted Principal Owed:**<br>$169,364.38 | | | **End Date:** |
| | **Total Agreed Arrearage:**<br>$0 | | | **Interest Rate %:** |
| | **Total Amount of Claim:**<br>$169,364.38 | | | **Treatment of Lien:**<br>Secured |

## PRIORITY CLAIM

| **CLASS 3 A** | **DESCRIPTION** | **INSIDER** | **IMPAIRMENT** | **TREATMENT** |
|---|---|---|---|---|
| | **Priority Claim of:**<br>Valley View Vintners, Inc.<br>Proof of Claim No. 22 | No | | **Payment Interval:**<br>Monthly |
| | **Collateral Value:** | | Valley View Vintners, Inc. ("VVV") filed a proof of claim for in excess of $115,000, of | **Payment Amount:**<br>$1,000 per month for ten months. Payment on a $50,000 general unsecured claim, for |

Maurice and Susan Wedell 9:11-BK-10544-DS
EXHIBIT E TO CHAPTER 11 PLAN
(Second Amended)

|  |  |  | which a portion was asserted to be priority, based on the provision of post petition services to debtors.  A portion of the debt will be treated as priority and VVV shall be paid $10,000, at the rate of $1,000 per moth for the first ten months of after the effective date of the chapter 11 plan.  The parties agreed that the balance of the VVV claim shall be $50,000 which will be treated and paid as a class 4 general unsecured creditors for months eleven through 60 of the chapter 11 plan | months eleven through 60 of the chapter 11 plan. |
| --- | --- | --- | --- | --- |
|  | **Description:** Claim for services |  |  | **Balloon Payment:** $1,000 for ten months |
|  | **Priority Security Interest:** None |  |  | **Begin Date:** Effective date of chapter 11 plan |
|  | **Adjusted Principal Owed:** |  |  | **End Date:** Month 60 of the chapter 11 plan |
|  | **Total Amount of Claim:** |  |  | **Treatment of Lien:** |

# EXHIBIT F

EXHIBIT F TO CHAPTER 11 DISCLOSURE STATEMENT

(Second Amended)

| Proofs of Claim | | Amount of Claim | Percentage of Total Debt |
|---|---|---|---|
| American Express National Ba | $ | 5,522.70 | 0.68% |
| American Express National Ba | $ | 19,961.74 | 2.46% |
| Bank of America | $ | 16,674.37 | 2.05% |
| Bank of America, N.A. | $ | 19,924.85 | 2.46% |
| Bank of America, N.A. | $ | 17,662.24 | 2.18% |
| Bank of America, N.A. | $ | 20,280.45 | 2.50% |
| Bank of America, N.A. | $ | 14,484.04 | 1.78% |
| ETS Laboratories | $ | 1,132.00 | 0.15% |
| Fancois Freres USA, Inc. | $ | 699.79 | 0.02% |
| Fiddlehead Cellars, LP | $ | 65,714.41 | 8.10% |
| Karl H Hesper | $ | 35,000.00 | 4.31% |
| Karl H Hesper | $ | 94,665.73 | 11.67% |
| Loanme, Inc. | $ | 74,917.65 | 9.23% |
| Mary Jane Johnston | $ | 188,457.61 | 23.23% |
| Saxco Int LLC | $ | 8,572.16 | 1.07% |
| Tommaso Barletta | $ | 58,815.07 | 7.25% |
| Valley View Vintners/Avisa | $ | 50,000.00 | 6.16% |
| Vincent Hearn | $ | 57,267.12 | 7.06% |
| Wells Fargo Bank, N.A. | $ | 2,189.52 | 0.30% |
| Xceed Financial Credit Union | $ | 9,115.50 | 1.12% |
| | | | |
| **Unsecured Creditors: Schedule F** | | | |
| Barrel Assoc International | $ | 1,432.70 | 0.18% |
| Carlson & Associates | $ | 2,352.61 | 0.29% |
| Jarvis Estate | $ | 6,800.00 | 0.84% |
| Pench Ranch Vineyards | $ | 15,800.00 | 1.95% |
| Vincent M Spohn | $ | 24,000.00 | 2.96% |
| **TOTAL** | | **$811,442.26** | **100.00%** |

# EXHIBIT G

Maurice and Susan Wedell 9:18-BK-10544-DS
Liquidation Analysis
EXHIBIT G TO CHAPTER 11 DISCLOSURE STATEMENT
(Second Amended)

| **EXEMPT ASSETS** | **ASSET VALUE AT LIQUIDATION** |
|---|---|

**CURRENT ASSETS**

| | |
|---|---|
| a. Cash on Hand | $0.00 |
| **TOTAL EXEMPT CURRENT ASSETS:** | $0.00 |

**OTHER ASSETS**

| | |
|---|---|
| a. 100 Ownership of a residence located at<br>344 Equestrian Way, Arroyo Grande, CA<br>Value: $900,000.00<br>Secured Debt: $873,913.88 | $0.00 |
| b. Non operational 1979 Corvette<br>Value: $800.00 | $800.00 |
| c. Non operational 1991 Corvette<br>Value: $800.00 | $800.00 |
| d. 1999 Chevrolet Suburban<br>Value: $1,000.00 | $1,000.00 |
| e. Household furnishings<br>Value: $1,500.00 | $1,500.00 |
| f. Miscellaneous electronics<br>Value: $500.00 | $500.00 |
| g. Wearing apparel<br>Value: $500.00 | $500.00 |
| h. Watch<br>Value: $500.00 | $500.00 |
| i. Diamond ring<br>Value: $1,880.00 | $1,880.00 |
| j. Retirement accounts<br>1. IRA<br>Value: $1.54<br>2. Profit Sharing Plan<br>Value: $290.53<br>3. IRA<br>Value: $15.50<br>4. Sheltered retirement<br>Value: $1,659.11 | $1,966.68 |

Maurice and Susan Wedell 9:18-BK-10544-DS
Liquidation Analysis
EXHIBIT G TO CHAPTER 11 DISCLOSURE STATEMENT
(Second Amended)

|  | **ASSET VALUE AT LIQUIDATION** |
|---|---|
| k. Alcoholic Beverage License<br>Value: $0.00 | $0.00 |
| l. Alcoholic Beverage License<br>Value: $0.00 | $0.00 |
| m. Alcohol and Tobacco Tax and Trade Bureau<br>Basic Permit<br>Value: $0.00 | $0.00 |
| n. California State Board of Equalization Seller's<br>Permit<br>Value: $0.00 | $0.00 |
| o. City of Arroyo Grande Business License<br>Value: $0.00 | $0.00 |
| p. Food and Agriculture Market License<br>Value: $0.00 | $0.00 |
| q. Athene Annuity and Life Company Life<br>Insurance<br>Value: $3,418.36 | $3,418.36 |
| r. Athene Annuity and Life Company Life<br>Insurance<br>Value: $6,836.72 | $6,836.72 |
| s. Guardian Life Insurance<br>Value: $0.00 | $0.00 |
| t. Lincoln National Life Insurance<br>Value: $0.00 | $0.00 |

_____

| **TOTAL EXEMPT OTHER ASSETS:** | $19,701.76 |
|---|---|
| **TOTAL EXEMPT ASSETS:** | $19,701.76 |

Maurice and Susan Wedell 9:18-BK-10544-DS
Liquidation Analysis
EXHIBIT G TO CHAPTER 11 DISCLOSURE STATEMENT
(Second Amended)

| **NON-EXEMPT ASSETS** | **ASSET VALUE AT LIQUIDATION** |
|---|---|
| **CURRENT ASSETS** | |
| a. Cash on Hand[1] | $82,025.00 |
| b. Accounts Receivable | $4,752.25 |
| **TOTAL CURRENT NON-EXEMPT ASSETS:** | $86,777.25 |
| | |
| **OTHER ASSETS** | |
| A. Fifty Percent (50%) ownership of a residential rental located at 365 W. Alameda Avenue, #204, Burbank, CA | $0.00 |
| Value: $240,313.00 | |
| Secured Debt: $ 169,364.38 | |
| | |
| B. Wine Inventory | $10,000.00 |
| Value: $30,000.00 | |
| | |
| C. Wine Equipment | $10,000.00 |
| Value: $10,000.00 | |
| | |
| **TOTAL NON-EXEMPT OTHER ASSETS:** | $20,000.00 |
| **TOTAL NON-EXEMPT ASSETS:** | $86,777.25 |
| **Less:** Estimated chapter 7 trustee fees and expenses | $11,000.00 |
| **Less:** Estimated chapter 11 administrative expenses | $25,000.00 |
| | |
| **NET LIQUIDATION VALUE OF NON-EXEMPT ASSETS** | $70,777.25 |

Maurice and Susan Wedell 9:18-BK-10544-DS
Liquidation Analysis
EXHIBIT G TO CHAPTER 11 DISCLOSURE STATEMENT
(Second Amended)

| **ANALYSIS OF PAYOUT OF UNSECURED CLAIMS** | |
|---|---|
| **Total Amount of Allowed Unsecured Claims:** | $811,442.26 |
| **% of Claims which Unsecured Creditors would receive or retain in a Chapter 7 liquidation:** | 8.7% |
| **% of Allowed Unsecured Claims to be paid through Chapter 11 plan:** | 18.49% |

| | |
|---|---|
| Cash debtors will have on hand by Effective Date | $85,000.00 |
| **To Pay:** Administrative claims | -$40,000.00 |
| Balance after paying these amounts.................. | $45,000.00 |

# EXHIBIT G-1

## WEDELL CELLARS WINE INVENTORY

### AS OF APRIL 11, 2018

| FINISHED WINE | CASES | HISTORICAL COST | HISTORICAL COST TOTAL | LIQUIDATION PRICE | LIQUIDATION VALUE | WHOLESALE PRICE | VALUE AT WHOLE-SALE PRICING |
|---|---|---|---|---|---|---|---|
| 2012 PINOT NOIR WAVERTREE SBC 12X750 | 241 | 110.00 | 26,510.00 | 12.00 | 2,892.00 | 105.00 | 25,305.00 |
| 2014 PINOT NOIR SRH AMUSE BOUCHE 12X750 | 616 | 320.00 | 197,120.00 | 18.00 | 11,088.00 | 132.00 | 81,312.00 |
| 2010 PINOT NOIR HILLSIDE VINEYARD 12X750 | 44 | 440.00 | 19,360.00 | 24.00 | 1,056.00 | 600.00 | 26,400.00 |
| 2012 PINOT NOIR STA RITA HILLS 12X750 | 33 | 320.00 | 10,560.00 | 18.00 | 594.00 | 288.00 | 9,504.00 |
| 2013 PINOT NOIR STA RITA HILLS 12X750 | 234 | 320.00 | 74,880.00 | 18.00 | 4,212.00 | 180.00 | 42,120.00 |
| 2014 PINOT NOIR STA RITA HILLS 12X750 | 234 | 320.00 | 74,880.00 | 18.00 | 4,212.00 | 288.00 | 67,392.00 |
| 2011 PINOT NOIR SRH BARN FIND 12X750 | 79 | 320.00 | 25,280.00 | 18.00 | 1,422.00 | 480.00 | 37,920.00 |
| 2012 PINOT NOIR SRH BARN FIND 12X750 | 82 | 320.00 | 26,240.00 | 18.00 | 1,476.00 | 480.00 | 39,360.00 |
| 2014 PINOT NOIR SRH BARN FIND 12X750 | 75 | 320.00 | 24,000.00 | 18.00 | 1,350.00 | 480.00 | 36,000.00 |
| 2011 PINOT NOIR SRH ROW FIND 12X750 | 39 | 320.00 | 12,480.00 | 18.00 | 702.00 | 480.00 | 18,720.00 |
| 2014 PINOT NOIR SRH ROW FIND 12X750 | 57 | 320.00 | 18,240.00 | 18.00 | 1,026.00 | 480.00 | 27,360.00 |
| 2013 VIOGNIER SANTA YNEZ VALLEY 12X750 | 42 | 90.00 | 3,780.00 | 12.00 | 504.00 | 90.00 | 3,780.00 |
| 2014 VIOGNIER SANTA YNEZ VALLEY 12X750 | 99 | 90.00 | 8,910.00 | 12.00 | 1,188.00 | 90.00 | 8,910.00 |
| 2013 CHARDONNAY SIERRA MADRE 12X750 | 374 | 280.00 | 104,720.00 | 12.00 | 4,488.00 | 144.00 | 53,856.00 |
| 2014 CHARDONNAY SIERRA MADRE 12X750 | 88 | 280.00 | 24,640.00 | 12.00 | 1,056.00 | 144.00 | 12,672.00 |
| 2015 CHARDONNAY SIERRA MADRE 12X750 | 259 | 280.00 | 72,520.00 | 12.00 | 3,108.00 | 144.00 | 37,296.00 |
| 2012 SYRAH ARROYO GRANDE 12X750 | 32 | 320.00 | 10,240.00 | 12.00 | 384.00 | 288.00 | 9,216.00 |
| 2013 SYRAH ARROYO GRANDE 12X750 | 35 | 320.00 | 11,200.00 | 12.00 | 420.00 | 288.00 | 10,080.00 |
| 2014 SYRAH ARROYO GRANDE 12X750 | 121 | 320.00 | 38,720.00 | 12.00 | 1,452.00 | 288.00 | 34,848.00 |
| TOTAL FINISHED WINE | 2,784 | | 784,280.00 | | 42,630.00 | | 582,051.00 |

| WINE IN BARREL & TANK (BULK) | CASE EQUIVALENTS | PROJECTED FINISHED COST | PROJECTED FINISHED COST | | | | |
|---|---|---|---|---|---|---|---|
| 2016 | | | | | | | |
| 2016 SYRAH ARROYO GRANDE 12X750 | 45 | 240.00 | 10,800.00 | 10.00 | 450.00 | 288.00 | 12,960.00 |
| 2016 CHARDONNAY SIERRA MADRE 12X750 | 112 | 240.00 | 26,880.00 | 10.00 | 1,120.00 | 144.00 | 16,128.00 |
| TOTAL BULK WINE | 157 | | 37,680.00 | | 1,570.00 | | 29,088.00 |
| TOTAL FINISHED AND WINE IN BULK | 2,941 | | 821,960.00 | | 44,200.00 | | 611,139.00 |

# EXHIBIT G-2

WEDELL CELLARS WINE INVENTORY

PROJECTED AS OF DECEMBER 31, 2018

|  | CASES | HISTORICAL COST | HISTORICAL COST TOTAL | LIQUIDATION PRICE | LIQUIDATION VALUE | WHOLESALE PRICE | VALUE AT WHOLE- SALE PRICING |
|---|---|---|---|---|---|---|---|
| FINISHED WINE |  |  |  |  |  |  |  |
| 2012 PINOT NOIR WAVERTREE SBC 12X750 | 135 | 110.00 | 14,850.00 | 12.00 | 1,620.00 | 90.00 | 12,150.00 |
| 2014 PINOT NOIR SRH AMUSE BOUCHE 12X750 | 70 | 320.00 | 22,400.00 | 18.00 | 1,260.00 | 120.00 | 8,400.00 |
| 2010 PINOT NOIR HILLSIDE VINEYARD 12X750 | 44 | 440.00 | 19,360.00 | 24.00 | 1,056.00 | 240.00 | 10,560.00 |
| 2012 PINOT NOIR STA RITA HILLS 12X750 | 15 | 320.00 | 4,800.00 | 18.00 | 270.00 | 150.00 | 2,250.00 |
| 2013 PINOT NOIR STA RITA HILLS 12X750 | 234 | 320.00 | 74,880.00 | 18.00 | 4,212.00 | 150.00 | 35,100.00 |
| 2014 PINOT NOIR STA RITA HILLS 12X750 | 234 | 320.00 | 74,880.00 | 18.00 | 4,212.00 | 150.00 | 35,100.00 |
| 2011 PINOT NOIR SRH BARN FIND 12X750 | 44 | 320.00 | 14,080.00 | 18.00 | 792.00 | 180.00 | 7,920.00 |
| 2012 PINOT NOIR SRH BARN FIND 12X750 | 72 | 320.00 | 23,040.00 | 18.00 | 1,296.00 | 180.00 | 12,960.00 |
| 2014 PINOT NOIR SRH BARN FIND 12X750 | 75 | 320.00 | 24,000.00 | 18.00 | 1,350.00 | 180.00 | 13,500.00 |
| 2011 PINOT NOIR SRH ROW FIND 12X750 | 15 | 440.00 | 6,600.00 | 18.00 | 270.00 | 180.00 | 2,700.00 |
| 2014 PINOT NOIR SRH ROW FIND 12X750 | 57 | 440.00 | 25,080.00 | 18.00 | 1,026.00 | 180.00 | 10,260.00 |
| 2013 VIOGNIER SANTA YNEZ VALLEY 12X750 | 12 | 90.00 | 1,080.00 | 12.00 | 144.00 | 60.00 | 720.00 |
| 2014 VIOGNIER SANTA YNEZ VALLEY 12X750 | 99 | 90.00 | 8,910.00 | 12.00 | 1,188.00 | 60.00 | 5,940.00 |
| 2013 CHARDONNAY SIERRA MADRE 12X750 | 340 | 280.00 | 95,200.00 | 12.00 | 4,080.00 | 60.00 | 20,400.00 |
| 2014 CHARDONNAY SIERRA MADRE 12X750 | 88 | 280.00 | 24,640.00 | 12.00 | 1,056.00 | 60.00 | 5,280.00 |
| 2015 CHARDONNAY SIERRA MADRE 12X750 | 259 | 280.00 | 72,520.00 | 12.00 | 3,108.00 | 60.00 | 15,540.00 |
| 2016 CHARDONNAY SIERRA MADRE 12X750 | 118 | 280.00 | 33,040.00 | 12.00 | 1,416.00 | 60.00 | 7,080.00 |
| 2012 SYRAH ARROYO GRANDE 12X750 | 32 | 320.00 | 10,240.00 | 12.00 | 384.00 | 144.00 | 4,608.00 |
| 2013 SYRAH ARROYO GRANDE 12X750 | 35 | 320.00 | 11,200.00 | 12.00 | 420.00 | 144.00 | 5,040.00 |
| 2014 SYRAH ARROYO GRANDE 12X750 | 121 | 320.00 | 38,720.00 | 12.00 | 1,452.00 | 186.00 | 22,506.00 |
| 2016 SYRAH ARROYO GRANDE 12X750 | 51 | 320.00 | 16,320.00 | 12.00 | 612.00 | 186.00 | 9,486.00 |
| TOTAL FINISHED WINE | 2,099 |  | 599,520.00 |  | 30,612.00 |  | 238,014.00 |

# EXHIBIT G-3

MAURICE & SUSAN WEDELL

LIQUIDATION VALUE OF REAL ESTATE HOLDING

| | TOTAL | BURBANK CONDOMINIUM<br>365 W ALAMEDA AVE #204<br>BURBANK 91506 | | PRIMARY RESIDENCE<br>344 EQUESTRIAN WAY<br>ARROYO GRANDE 93420 |
|---|---|---|---|---|
| | | MAURICE &<br>SUSAN WEDELL<br>50% | MARY JANE<br>JOHNSTON<br>50% | MAURICE &<br>SUSAN WEDELL<br>100% |
| CURRENT MARKET VALUE | 475,000.00 | 237,500.00 | 237,500.00 | 1,075,000.00 |
| SELLING EXPENSES | (38,000.00) | (19,000.00) | (19,000.00) | (86,000.00) |
| LESS REPAIRS NEEDED PRIOR TO SALE<br>REPAIR ROOF & SKYLIGHTS, REPAIR PATIO DECK, REPAIR WATER DAMAGE LOWER LEVEL | | | | (120,000.00) |
| NET SALES PROCEEDS | 437,000.00 | 218,500.00 | 218,500.00 | 869,000.00 |
| OUTSTANDING LOAN BALANCE | | (171,248.59) | | (881,725.95) |
| SALES PROCEEDS BEFORE TAXES | | 47,251.41 | 218,500.00 | (12,725.95) |
| PURCHASE PRICE | 116,994.00 | 58,497.00 | 58,497.00 | 825,000.00 |
| LESS DEPRECIATION | (81,000.00) | (40,500.00) | (40,500.00) | |
| TAX BASIS OF PROPERTY | 35,994.00 | 17,997.00 | 17,997.00 | |
| TAXABLE PROFIT ON SALE | 401,006.00 | 200,503.00 | 200,503.00 | |
| FEDERAL TAX ON PROFIT @15% | | (30,075.45) | (30,075.45) | |
| CALIFORNIA TAX ON PROFIT @9.3% | | (18,646.78) | (18,646.78) | |
| NET CASH PROCEEDS OF SALE | | (1,470.82) | 169,777.77 | (12,725.95) |

Maurice and Susan Wedell

Case Number: **9:18-bk-10544-DS**

Plaintiff(s).

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address in:

**1042 Pacific Street Suite D**
**San Luis Obispo, CA 93401**

A true and correct copy of the foregoing document described **SECOND AMENDED CHAPTER 11 DISCLOSURE STATEMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 19, 2019 ,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **United States Trustee (ND)**       **ustpregion16.nd.ecf@usdoj.gov**
- Brian D Fittipaldi                                brian.fittipaldi@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **July 19, 2019** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**Honorable Deborah J. Saltzman**
**United States Bankruptcy Court**
**1415 State Street - Courtroom 202**
**Santa Barbara, CA 93101**

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **July 19, 2019** | Ryan S. Livigni | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.

Maurice Leo Wedell
344 Equestrian Way
Arroyo Grande, CA 93420


Susan Elizabeth Wedell
344 Equestrian Way
Arroyo Grande, CA 93420


Vaughn C. Taus
The Law Office of Vaughn C. Taus
1042 Pacific Street
Suite D
San Luis Obispo, CA 93401


American Express
PO Box 0001
Los Angeles, CA 90096-8000


American Express
PO Box 0001
Los Angeles, CA 90096-8000


AT&T Universal Card
PO Box 78045
Phoenix, AZ 85062-8045


AT&T Universal Card
PO Box 78045
Phoenix, AZ 85062-8045


Athene Annuity
7700 Mills Civic Pkwy
West Des Moines, IA 50266-3862

Athene Annuity and Life Company
7700 Mills Civic Pkwy
West Des Moines, IA 50266-3862


Athene Annuity and Life Company


Athene Annuity and Life Insurance


Bank of America
PO Box 15019
Wilmington, DE 19886-5019


Bank of America
PO Box 15019
Wilmington, DE 19886-5019


Bank of America
PO Box 15019
Wilmington, DE 19886-5019


Bank of America
PO Box 15019
Wilmington, DE 19886-5019


Bank of America
PO Box 15019
Wilmington, DE 19886-5019

Bank of America
PO Box 31785
Tampa, FL 33631-3785

Bank of America
PO Box 31785
Tampa, FL 33631-3785

Barrel Associates International
2180 Oak Knoll Avenue
Napa, CA 94558

Bradley Fisher
10830 Jasmine Drive
Scottsdale, AZ 85255

Bryan G Paul
36101 N 29th Drive
Phoenix, AZ 85086

Capital One, N. A.
PO Box 71087
Charlotte, NC 28272-1087

Carlson & Associates
1439 Grover Street
Healdsburg, CA 95448

Chase
Cardmember Service
PO Box 94014
Palatine, IL 60094-4014

Chase
Cardmember Service
PO Box 94014
Palatine, IL 60094-4014

Chase
Cardmember Service
PO Box 94014
Palatine, IL 60094-4014

Chase
Cardmember Service
PO Box 94014
Palatine, IL 60094-4014

Chase
Cardmember Service
PO Box 94014
Palatine, IL 60094-4014

Chase
Cardmember Service
PO Box 94014
Palatine, IL 60094-4014

Chase
Cardmember Service
PO Box 94014
Palatine, IL 60094-4014

Citi Cards
PO Box 78019
Phoenix, AZ 85062-8019

Discover
PO Box 51908
Los Angeles, CA 90051-6208

Discover
PO Box 51908
Los Angeles, CA 90051-6208


Discover
PO Box 51908
Los Angeles, CA 90051-6208


ETS Laboratories
Accounting Department
899 Adams Street, Suite A
Saint Helena, CA 94574


Fiddlehead Cellars
1597 E Chestnut Ave
Lompoc, CA 93436


First National Bank
PO Box 30112
Lansing, MI 48909-7612


Francoise Freres USA, Inc.
505 29th Avenue
San Francisco, CA 94121-2818


GM Card
Captial One, N.A.
PO Box 71087
Charlotte, NC 28272-1087


Guardian Life

Jarvis Estate
2970 Monticello Road
Napa, CA 94558


Karl H Hesper
755 Via Airosa
Santa Barbara, CA 93110


Karl H Hesper
755 Via Airosa
Santa Barbara, CA 93110


Kirby Anderson
Avisa Wine Design
PO Box 1378
Arroyo Grande, CA 93421


La Encantada Vineyard
Hillside Road, LLC
690 Alamo Pintado Road
Solvang, CA 93463


Loanme, Inc.
1900 S. State College Boulevard
Sutie 300
Anaheim, CA 92806


Mary Jane Johnston
5257 Coldwater Canyone Ave
Van Nuys, CA 91401


Mary Jane Johnston
5257 Unit D, Coldwater Canyon
Shermon Oaks, CA 91401

Pench Ranch Vineyards
1909 West Highway 246
Buellton, CA 93427


Rancho La Vina
PO Box 38
Buellton, CA 93427


Saxco Int, LLC, Demptos Glass
Department #34538
PO Box 39000
San Francisco, CA 94139


Schuering Zimmerman & Doyle LLP
400 University Avenue
Sacramento, CA 95825


Tommaso Barletta
968 South Westlake Blvd #4
Thousand Oaks, CA 91362


Vincent Hearn
6077 Burgundy Avenue
Rancho Cucamonga, CA 91737


Vincent M Spohn
1005 Jefferson Street
Napa, CA 94581-0748


Wells Fargo
PO Box 51193
Los Angeles, CA 90051-5493

Westerly Estate LLC
c/o C&D llc
690 Alamo Pintado Road
Solvang, CA 93463


Xceed Financial Credit Union
888 N. Nash Street
El Segundo, CA 90245


Youngs Market Company
14402 Franklin Avenue
Tustin, CA 92780